UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

```
ERNEST CORRRADO, as                :
Administrator of the ESTATE        :CIVIL ACTION NO. 3:17-cv-123
OF ELEANOR CORRADO, deceased       :
and ERNEST CORRADO,                :(JUDGE CONABOY)
Individually,                      :
                                   :
        Plaintiff,                 :
                                   :
        v.                         :
                                   :
TIMBER RIDGE HEALTH CARE CENTER,   :
VALLEY CREST NURSING, L.P.,        :
VALLEY CREST NURSING GP, LLC,      :
and VALLEY CREST NURSING, INC.,    :
                                   :
        Defendants.                :
                                   :
```

## MEMORANDUM

Here the Court considers Defendants' Motion to Dismiss Pursuant to Fed. R.C.P. 12(b)(1) and, Alternatively, Fed. R.C.P. 12(b)(6). (Doc. 7.) With the motion, Defendants asserts the following: 1) because diversity jurisdiction does not exist, the Court lacks subject matter jurisdiction and the Complaint (Doc. 1) must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1); and 2) should the Complaint (Doc. 1) not be dismissed based on subject matter jurisdiction, the parties should be compelled to proceed to arbitration. (Doc. 12 at 3.) For the reasons discussed below, the Court concludes dismissal is appropriate pursuant to Fed. R. Civ. P. 12(b)(1).

### I. Background[1]

The Decedent, Eleanor Corrado, was eighty-four years old when she was admitted to Timber Ridge Health Care Center ("Timber Ridge") on October 9, 2015. (Doc. 1 ¶¶ 9, 10.) She died eleven days later, on October 20, 2015, after she was dropped from a Hoyer lift. (*Id.* ¶ 2.) Plaintiff filed the Complaint on January 23, 2017. (Doc. 1.)

The Complaint states that Plaintiff is a resident of the state of Florida with a permanent address of 7245 Mahaffey Drive, Apartment A, New Port Richey, Pasco County, Florida. (Doc. 1 ¶ 1.) The Complaint also states that, at the time of her death, Eleanor Corrado was a resident of the state of Florida with the same permanent address. (*Id.*)

Records from Timber Ridge are attached to the Complaint. (Doc. 12-1.) A Progress Note dated October 9, 2015, identified as an "Admission Summary" indicates that Mrs. Corrado was accompanied by her daughter, Eleanor, and son-on-law, and that she planned "to live at the facility long-term." (*Id.* at 4.) An "Occupational Therapy Certification" contains a "Past Medical History" section which states the following: "As per chart: 84 y/o female resident admitted to TRHCC for LTC placement from another SNF in Florida in order to be located closer to her daughters." (Doc. 12-1 at 1.)

---

[1] Because the Court decides this case on diversity grounds, the background section focuses on facts relevant to this issue.

An October 11, 2015, "Activities Assessment" states that Mrs. Corrado "[m]oved here from Florida to be closer to family." (*Id.* at 2.) A Social Service Progress Note dated October 15, 2015, indicates that the Decedent was referred to as "Ellie" and "Eleanor" and her daughter was referred to as "Eleanor." (*Id.* at 3.) The Noted stated that

> Ellie's daugher Eleanor visited with MSW to complete initial paperwork. Ellie is a transfer from Trinity Regional SNF in Florida. She is diagnosed with COPD, UTI, depression, anxiety, Alzheimer's. Eleanor is alert and oriented with some confusion at times, and she is able to express her needs. Ellie is here for long term care. Her husband is in the process of moving to Wilkes-Barre from Florida. Her children live in nearby towns. . . . She has a living will and POA; copies requested. Eleanor denied any concern at this time.

(Doc. 12-1 at 3.)

## II. Discussion

### A. *Legal Standards*

"Federal courts are courts of limited jurisdiction . . . [and] possess only that power authorized by Constitution and statute. . . . It is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Col. of America*, 511 U.S. 375, 377 (1994) (citations omitted).

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of claims based on the lack of subject-matter jurisdiction. District courts "enjoy substantial procedural

3

flexibility in handling Rule 12(b)(1) motions." *Berardi v. Swanson Mem'l Lodge No. 48*, 920 F.2d 198, 200 (3d Cir. 1990); *see also McCann v. Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006) (quoting *Berardi*, 920 F.2d at 200). The Third Circuit Court of Appeals set out standards for reviewing challenges to subject-matter jurisdiction in *Lincoln Ben. Life. Co. v. AEI Life, LLC*, 800 F.3d 99 (3d Cir. 2015).

> The burden of establishing federal jurisdiction rests with the party asserting its existence. Challenges to subject matter jurisdiction may be facial or factual. A facial attack concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites.
>
> In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff. By contrast, in reviewing a factual attack, the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence.

*Id.* at 105 (citations and internal quotations omitted). In a factual challenge, "no presumptive truthfulness attaches to Plaintiff's allegations." *Mortenson v. First Fed. Savings & Loan Assoc.*, 549 F.2d 884, 891 (3d Cir. 1977).

Citing *McCann*, 458 F.3d at 290, *Linclon* stated "[i]f there is a dispute of a material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction."

4

800 F.3d at 105. *McCann* noted that "[a] court can evaluate its jurisdiction without an evidentiary hearing 'so long as the court has afforded [the parties] notice and a fair opportunity to be heard.'" 458 F.3d at 290 (quoting *Tanzymore v. Bethlehem Steel Corp.*, 457 F.2d 1320, 1323-24 (3d Cir. 1972)) (citing *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 364 (1st Cir. 2001); *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)). *McCann* also noted that "a key consideration in determining whether a hearing is required is whether either party requested one." 458 F.3d at 290 (citing *Valentin*, 254 F.3d at 364-65; *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1120 (1st Cir. 1989)).

Here jurisdiction is based on diversity of citizenship which is governed by 28 U.S.C. § 1332 which states in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum of or value of &75,000, exclusive of interests and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). The statute also provides that the legal representative of a decedent is deemed to be a resident of the same state as the decedent. 28 U.S.C. § 1332(c)(2). The statute has consistently been held to require complete diversity of citizenship: "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different state from *each* plaintiff." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).

5

Several principles guide the analysis of a party's citizenship for diversity purposes. *McCann*, 458 F.3d at 286. First, the party asserting diversity jurisdiction generally meets this burden by proving diversity of citizenship by a preponderance of the evidence. *Id.* (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). Further guidance indicates that

> [c]itizenship is synonymous with domicile, and "the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning." *Vlandis v. Kline*, 412 U.S. 441, 454, 93 S. Ct. 2230, 37 L.Ed.2d 63 (1973). In determining an individual's domicile, a court considers several factors, including "declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business." *Krasnov* [*v. Dinan*, 465 F.2d 1298, 1301 (3d Cir. 1972)] (quotations omitted). Other factors to be considered may include brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration. 13B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 3612 (3d ed. 2005).
>
> An individual can change domicile instantly. To do so, two things are required: "[h]e must take up residence at the new domicile, and he must intend to remain there." *Krasnov*, 465 F.2d at 1300. But a domicile once acquired is presumed to continue until it is shown to have been changed." *Mitchell v. United States*, 21 Wall. 350, 88 U.S. 350, 353, 22 L. Ed. 584 (1874); *Korn v. Korn*, 398 F.2d 689, 691 n.3 (3d Cir. 1968) (quoting *Mitchell*, 88 U.S. at 353). This principle gives rise to a presumption favoring an established domicile

6

>           over a new one. *See*, *e.g.*, *Acridge v.
>           Evangelical Lutheran Good Samaritan Soc.*, 334
>           F.3d 444, 448 (5th Cir. 2003); *Gutierrez v.
>           Fox*, 141 F.3d 425, 427 (2d Cir. 1998); State
>           Farm Mut. Auto Ins. Co. v. Dyer, 19 F.3d 514,
>           519 (10th Cir. 1994); *Holmes v. Sopuch*, 639
>           F.2d 431, 434 (8th Cir. 1981); *Hawes v. Club
>           Ecuestre El Comandante*, 598 F.2d 698, 701
>           (1st Cir. 1979); *Stine v. Moore*, 213 F.2d
>           446, 447 (5th Cir. 1954); *see also* 13B Wright
>           et al., *supra*, § 3612.

*McCann*, 458 F.3d at 286-87.

Pursuant to Fed. R. Evid. 301, the existence of a presumption in a civil case "imposes the burden of production on the party against whom it is directed, but does not shift the burden of persuasion." *McCann,* 458 F.3d at 287 (citations omitted). As applied to diversity jurisdiction and domicile, *McCann* explained that

>           [u]nder Rule 301, the presumption favoring an
>           established domicile places the burden of
>           production on the party alleging a change of
>           domicile, but does not affect the burden of
>           persuasion, which remains throughout with the
>           proponent of federal jurisdiction.
>           Accordingly, the presumption's only effect is
>           to require the party asserting a change in
>           domicile to produce enough evidence
>           substantiating a change to withstand a motion
>           for summary judgment or judgment as a matter
>           of law.
>
>           When the party claiming the new domicile
>           is the opponent of federal jurisdiction, the
>           effect of the presumption in favor of an
>           established domicile is straightforward.  The
>           party claiming a new domicile bears the
>           initial burden of producing sufficient
>           evidence to rebut the presumption in favor of
>           the established domicile.  If the party does
>           so, the presumption disappears, the case goes

7

> forward, and the party asserting jurisdiction
> bears the burden of proving diversity of
> citizenship. *See*, *e.g.*, *Bank One, Tex. N.A.
> v. Montle*, 964 F.2d 48, 50 (1st Cir. 1992);
> *Lew* [*v. Moss*, 797 F.2d 747, 749-51 (9th Cir.
> 1986)]).

*McCann*, 458 F.3d at 287-88.

## *B. Defendants' Motion*

Defendants state that they present both a facial and factual attack: the facial attack is based on the assertion that the Complaint states that Plaintiff is a resident of Florida and the decedent was a resident of Florida at the time of her death but the Complaint makes no mention of citizenship or domicile; the factual attack is based on the assertion that, even if Plaintiff properly pled citizenship, the facts contained in relevant documents show that Plaintiff was a citizen of Pennsylvania at the time of her death. (Doc. 12 at 7.)

Regarding the facial challenge, Plaintiff contends that averring residency and a permanent address in Florida was equivalent to averring citizenship. (Doc. 15 at 9.) Plaintiff also states that, assuming the veracity of the Complaint, the assertion that the decedent's permanent address was in Florida is sufficient to dismiss Defendants' facial challenge. (*Id.* at 16.) Allegations that a person is a resident of a state with a permanent address in that state are not synonymous with citizenship. *See*, *e.g.*, *Bell v. Pleasantville Hous. Auth.*, 443 F. App'x 731, 734 (3d Cir. 2011) (not precedential). Therefore, Plaintiff's pleading is

8

inadequate to establish citizenship. However, Plaintiff notes that he anticipates filing an Amended Complaint to aver that Mrs. Corrado was a citizen of Florida at the time of her death. (Doc. 15 at 9 n.2.) Before deciding whether granting leave to amend is appropriate in this case, the Court will review the merits of Defendant's factual challenge.

With their factual challenge, Defendants maintain that Mrs. Corrado's domicile changed when she entered Timber Ridge with the intent to remain there. (Doc. 12 at 8-9.) Plaintiff alleges that her domicile remained in Florida. (Doc. 15 at 18-19.) In the circumstances of this case, the parties' assertions may implicate the presumption favoring an established domicile. If so, Defendant has the initial burden of producing sufficient evidence to rebut the presumption. *McCann*, 458 F.3d at 289. The Court concludes Defendants have done so with the Timber Ridge records submitted. (Doc. 12-1.) These records show that Mrs. Corrado became a resident at Timber Ridge for the purpose of *long term placement* in order to be closer to her daughters. (Doc. 12-1 at 1.) Notes from a Social Worker's visit with Mrs. Corrado's daughter, Eleanor, again indicate that Mrs. Cordaro was admitted for long-term care. (*Id.* at 2.) Eleanor also indicated that Mrs. Corrado's husband was in the process of moving to Pennsylvania from Florida. (*Id.*) Admission Summary notes state that "Resident plans to live at facility long-term." (*Id.* at 4.)

9

As set out in *McCann*, an individual can change domicile instantly if she takes up residence at the new domicile and intends to remain there. 458 F.3d at 287. Here, there is no question that Plaintiff resided in Pennsylvania at the time of her death and the Timber Ridge records show that, when admitted, she intended to remain there. Thus, Defendant has produced sufficient evidence to rebut the presumption favoring the previously established Florida domicile.

With this determination, Plaintiff has the burden of proving diversity of citizenship. *McCann*, 458 F.3d at 288. Plaintiff has had the opportunity to rebut the evidence and argument presented by Defendant. (Docs. 15, 15-1.) Plaintiff first identifies the evidence upon which Defendants relied to be "a note in the medical chart that Mrs. Corrado had come to Timber Ridge 'to be closer to her daughters' . . . and the assertion that the facility had applied for Pennsylvania benefits on her behalf." (Doc. 15 at 17.) Plaintiff calls this "a paucity of . . . grounds" for arriving at the conclusion that Mrs. Corrado was a citizen of Pennsylvania at the time of her death and urges the Court to reject Defendants' conclusion or order the development of the factual record to determine whether Defendants have established that Mrs. Corrado was a Pennsylvania citizen. (Doc. 15 at 17.) Plaintiff does not address Defendants' reference to Timber Ridge records which indicate that Mrs. Corrado intended to reside at the Pennsylvania

10

facility indefinitely and her daughter's report of Plaintiff's relocation plans. (*See* Doc. 12 at 9 & n.1.)

Plaintiff posits that interrogatory responses and estate documents filed after Mrs. Corrado's death establish her Florida citizenship. (Doc. 15 at 18-19.) Specifically, Plaintiff states that the responses establish that the Florida Medicaid program had asserted a lien against her estate, and Probate Documents establish that Mrs. Corrado's estate was accepted for probate in Florida. (*Id.* at 19.) It is also averred that Plaintiff would testify, if given the opportunity, that "his wife had come to Pennsylvania to consider relocation to be nearer to her children but that no decision had been made and that a fundamental consideration was how well she would ultimately adapt to Timber Ridge." (*Id.*)

Defendants respond that the Florida Medicaid lien has no bearing on the citizenship determination because Mrs. Corrado was likely domiciled in Florida before she moved to Pennsylvania and the lien is a result of her extended stay in a Florida facility. (Doc. 16 at 5.) Defendants also assert that the probate records which show that Mrs. Corrado's March 21, 1996, will was admitted into probate and Plaintiff was appointed personal representative are not indicative of citizenship because "a court is not required to consider domicile and citizenship at the time of the decedent's death in order to admit a will into probate." (*Id.*) Regarding Plaintiff's proposed testimony about his wife's intent, Defendants

11

maintain it is Mrs. Corrado's intent that matters. (Doc. 16 at 6 (citing *Juvelis v. Snider*, 68 F.3d 648, 654 (3d Cir. 1995) (holding that domicile is determined based on the intent of the person in question to make a particular location their permanent home, the intent to remain there, one's physical presence, or residence, in a state)).)

The Court agrees with Defendants that the Florida probate records and Medicaid lien do not establish Florida citizenship. Although Plaintiff's brief indicates potential testimony about the trial nature of the move to Pennsylvania, Plaintiff does not refute Mrs. Corrado's daughter's indication that he was in the process of moving to Pennsylvania (see Doc. 12-1 at 3) or that Timber Ridge records consistently refer to Mrs. Corrado's admission to the facility for long term care and that she planned to live at the facility long-term (*see* Doc. 12-1 at 1, 3, 4).

Given that Plaintiff was a resident of Pennsylvania who was documented to have expressed to Timber Ridge staff members that she intended to remain in Pennsylvania, evidence supports that Mrs. Corrado was a citizen of Pennsylvania at the time of her death. *See McCann*, 458 F.3d at 286; *see also Krasnov*, 465 F.2d at 1300. Importantly, it is Plaintiff's burden to establish that Mrs. Corrado was a citizen of Florida at the time of her death and "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen*, 511 U.S. at 377. Based on the narrow

parameters of federal jurisdiction and Plaintiff's lack of evidence supporting Florida citizenship, the Court concludes Plaintiff has not met his burden of showing that federal jurisdiction is appropriate in this case.[2] With the determination that Mrs. Corrado was a citizen of Pennsylvania at the time of her death, Plaintiff, as the decedent's representative, is deemed to be a citizen of Pennsylvania for diversity purposes. 28 U.S.C. § 1332(c)(2). Therefore, diversity of citizenship does not exist and the Complaint must be dismissed.

### III. Conclusion

For the reasons discussed above, the Court concludes

---

[2] Although Plaintiff notes how he "would testify," he does not ask the Court for a hearing on the diversity issue nor does he argue that Mrs. Corrado could not speak for herself or that Timber Ridge records are inaccurate. (Doc. 15 at 19.) Plaintiff's request for further development of the record "to ascertain whether Timber Ridge has established that Mrs. Corrado was transformed from a Florida citizen into a Pennsylvania citizen in the eleven days between her arrival and her untimely death" (Doc. 15 at 17), does not acknowledge that, in the final analysis, it is *Plaintiff's burden* to establish that Mrs. Corrado was a citizen of Florida.

Not only did the parties not request a hearing, but the Court does not find that there are material facts in dispute which require one. Defendants submitted facts which they asserted supported Pennsylvania citizenship and Plaintiff presented facts which he asserted supported Florida citizenship. The accuracy of the facts submitted by the parties was not disputed. While Plaintiff may have raised an inference going to intent with his statement as to how he would testify, as presented this was not evidence of a material fact in dispute. (*See* Doc. 15 at 19.) Furthermore, as noted above, Plaintiff did not request a hearing. *See, e.g.*, *McCann,* 458 F.3d at 290 ("a key consideration in determining whether a hearing is required is whether either party requested one").

13

Defendants' Motion to Dismiss Pursuant to Fed. R.C.P. 12(b)(1) and, Alternatively, Fed. R.C.P. 12(b)(6) (Doc. 7) is properly granted and Plaintiff's Complaint is dismissed without prejudice so that Plaintiff may refile the action in a court with competent jurisdiction. The basis of this determination indicates there is no reason to grant leave to amend the Complaint. An appropriate Order is filed simultaneously with this Memorandum.

S/Richard P. Conaboy  
RICHARD P. CONABOY  
United States District Judge

DATED: May 25,2017